UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 06-21998-CIV-HUCK/O'SULLIVAN

MAREA A. BROADBENT and
BARBARA A. DENLEY,

      Plaintiffs,

v.

MAREA A. EDYNAK,

      Defendant,

_____/

## REPORT AND RECOMMENDATION

**THIS MATTER** is before the Court on the Plaintiff's Motion to Enforce Settlement

Agreement and Incorporated Memorandum of Law (DE# 33, 9/24/09) filed by plaintiff

Barbara Denley. This matter was referred to the undersigned by the Honorable Paul C.

Huck, United States District Court Judge for the Southern District of Florida pursuant to

28 U.S.C. § 636 (b). See Order of Reference to Magistrate Judge (DE# 36, 10/7/09).

Having reviewed the applicable filings and the law, the undersigned respectfully

recommends that Plaintiff's Motion to Enforce Settlement Agreement and Incorporated

Memorandum of Law (DE# 33, 9/24/09) be **DENIED** in accordance with this Report and

Recommendation.

## BACKGROUND

On August 8, 2006, plaintiffs Marea Broadbent[1] and Barbara Denley filed a

---

[1] Marea Broadbent was the mother of plaintiff Barbara Denley and defendant
Marea A. Edynak. Id. Ms. Broadbent passed away on March 25, 2009. See Plaintiff's
Motion to Enforce Settlement Agreement and Incorporated Memorandum of Law (DE#
33 at 4, 9/24/09).

complaint against defendant Marea Edynak alleging causes of action for partition,[2] accounting and unjust enrichment relating to real property owned by plaintiff Barbara Denley and defendant Marea Edynak as tenants in common.[3] See Complaint (DE# 1, 8/9/06). On October 31, 2006, the defendant filed a counterclaim challenging Marea Broadbent's transfer of the property to Barbara Denley. See Answer, Affirmative Defenses and Counterclaim (DE# 11, 10/31/06). On January 31, 2007, the parties reached a settlement at a settlement conference before Magistrate Judge Palermo. See Minute Entry (DE# 31, 1/31/07). On February 2, 2007, the Court entered an Order of Dismissal (DE# 32) "retain[ing] jurisdiction for the sole purpose of enforcing the terms of the settlement documents to be entered into between the parties." See Order of Dismissal (DE# 32, 2/2/07).

Following Ms. Broadbent's death on March 25, 2009, the plaintiff as the executor of the Last Will and Testament of Marea A. Broadbent learned that the Marea Broadbent Trust was the owner of an annuity with Transamerica Life Insurance Company (hereinafter "Transamerica") which listed the defendant as the beneficiary of an annuity[4] worth approximately $15,000. See Plaintiff's Motion to Enforce Settlement

---

[2] On December 14, 2006, the plaintiffs supplemented the complaint to add Marea Broadbent to the partition count. See Plaintiffs' Supplement to Their Complaint (DE# 20, 12/14/06).

[3] Marea Broadbent initially purchased the property in 2002 and listed herself and defendant Marea Edynak as joint tenants with full right of survivorship. Marea Broadbent transferred her interest in the property to plaintiff Barbara Denley in 2006. See Plaintiff's Motion to Enforce Settlement Agreement and Incorporated Memorandum of Law (DE# 33 at Exhibit A, 9/24/09).

[4] "Annuities are contracts under which the purchaser makes one or more premium payments to the issuer in exchange for a series of payments, which continue either for a fixed period or for the life of the purchaser or a designated beneficiary." NationsBank of North Carolina, N.A. v. Variable Annuity, 513 U.S. 251, 254 (1995).

Agreement and Incorporated Memorandum of Law (DE# 33 at 4-5, 9/24/09).

Transamerica advised the plaintiff that it need certain documents before releasing the

annuity to the plaintiff including a Release and Indemnification form (hereinafter "form")

signed by the defendant. Id. at 5. The plaintiff sent correspondence to the defendant's

counsel requesting that the defendant execute the form. Id.

When the plaintiff was unable to obtain the executed form from the defendant,

she filed the instant motion. See Plaintiff's Motion to Enforce Settlement Agreement

and Incorporated Memorandum of Law (DE# 33, 9/24/09). On October 3, 2009, the

defendant filed her response. See Defendant's Response to Plaintiff's Motion to

Enforce Settlement Agreement (DE# 35, 10/3/09). The plaintiff filed her reply on

October 19, 2009. See Plaintiff's Memorandum of Law in Reply to Defendant's

Opposition to Plaintiff's Motion to Enforce Settlement Agreement (DE# 39, 10/19/09).

## STANDARD OF REVIEW

"The party seeking to enforce a settlement agreement bears the burden of

showing the opposing party assented to the terms of the agreement." BP Products

North America, Inc. v. Oakridge at Winegard, Inc., 469 F. Supp. 2d 1128, 1133 (M.D.

Fla. 2007) (citation omitted). A settlement agreement is a contract and its construction

as well as its enforcement are governed by principles of Florida's general contract law.

Wong v. Bailey, 752 F.2d 619, 621 (11th Cir. 1985). The unambiguous language in a

contract is to be given a realistic interpretation based on the plain, everyday meaning

conveyed by the words. Kipp v. Kipp, 844 So.2d 691, 693 (Fla. 4th DCA 2003). If

necessary, because the agreement is unclear, the court shall "'determine the intention

of the parties from the language of the agreement, the apparent objects to be

accomplished, other provisions in the agreement that cast light on the question and the circumstances prevailing at the time of the agreement.'" Somerset Pharmaceuticals, Inc. v. Kimball, 49 F. Supp. 2d 1335, 1338 (M.D. Fla. 1999)(quoting Schwartz v. Florida Bd. of Regents, 807 F.2d 901, 905 (11th Cir. 1987)).

## ANALYSIS

The plaintiff seeks an order compelling the defendant to execute Transamerica's Release and Indemnification form or otherwise enter an order permitting the release of funds contained in the Transamerica annuity to the Estate of Marea Broadbent. See Plaintiff's Motion to Enforce Settlement Agreement and Incorporated Memorandum of Law (DE# 33 at 10, 9/24/09).

The plaintiff argues that pursuant to paragraphs 4, 5 and 7 of the Settlement Agreement, the defendant "expressly relinquished her right to further claim an entitlement to any of Ms. Broadbent's funds and assets." See Plaintiff's Motion to Enforce Settlement Agreement and Incorporated Memorandum of Law (DE# 33 at 9, 9/24/09). Paragraphs 4, 5 and 7 of the Settlement Agreement read as follows:

> 4.    General Release in Favor of Broadbent: Edynak hereby remises, releases, acquits, satisfies, and forever discharges Broadbent, as well as her attorneys, agents and other representatives ("Broadbent Releasees"), of and from all, and all manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialities, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, claims and demands whatsoever, in law or in equity, which Edynak ever had, now has, or may have, against Broadbent Releasees, for , upon or by reason of any matter, cause or thing whatsoever, from the beginning of the world to the present day.

> 5.    General Release in Favor of Denley: Edynak hereby remises, releases, acquits, satisfies, and forever discharges Denley, as well as her attorneys, agents and other representatives ("Denley Releasees"), of and from all, and all manner of action and actions, cause

4

and causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialities, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, claims and demands whatsoever, in law or in equity, which Edynak ever had, now has, or may have against Denley Releasees, for, upon or by reason of any matter, cause or thing whatsoever, from the beginning of the world to the present day.

       7.     <u>Scope of the Mutual Release</u>: For the avoidance of this doubt, the Mutual Releases specified in Paragraphs 4 through 6 above are intended to include, but are not [sic] be limited to, a release of all claims and of any kind which were raised or could have [sic] raised, whether known, unknown, suspected or unsuspected to exist, against Broadbent, Denley and Edynak in connection with the case styled, Case No. 06-21998-Civ-Huck/Simonton (the "Action"). Moreover, by virtue of her General Release in favor of Broadbent and Denley, Edynak is expressly releasing any and all rights to later challenge the validity, on any grounds, including lack of capacity or undue influence, of this Agreement; the July 26, 2006 Special Warranty Deed; Broadbent's Durable Power of Attorney with Health Care Provisions dated April 5, 2005; Broadbent's Living Will dated April 8, 2005; and Broadbent's Last Will and Testament, dated May 27, 2005. Edynak further covenants not to incite or encourage anyone else to object to these documents.

       However, nothing contained herein shall release, discharge or waive the obligations, promises, representations (including the representations included in Paragraph 3 above) or commitments provided for in this Agreement.

<u>See</u> Plaintiff's Motion to Enforce Settlement Agreement and Incorporated Memorandum

of Law (DE# 33 at Exhibit A, 9/24/09). The plaintiff also relies on paragraph 9 of the

Settlement Agreement. <u>Id.</u> at 5. Paragraph 9 states, in part, as follows:

       9.     <u>Additional Documentation/Items.</u> In the event it becomes necessary or desirable to execute or provide further or additional documentation to implement the intent of this Agreement, each party shall, upon five (5) days' written request, promptly execute/provide such additional documentation.

<u>Id.</u> at Exhibit A. According to the plaintiff, "[t]his provision was specifically negotiated for,

and expressly added to ensure that should subsequently discovered assets such as the

Transamerica Annuity be unearthed that [the defendant] would, to the extent

necessary, execute any necessary documents to implement the intent and spirit of the Settlement Agreement. . . . If Paragraph 9 is not interpreted to require [the defendant] to execute the needed release, it is rendered meaningless." See Plaintiff's Memorandum of Law in Reply to Defendant's Opposition to Plaintiff's Motion to Enforce Settlement Agreement (DE# 39 at 9, 10/19/09).

The plaintiff argues that  "Ms. Edynak's General Release unequivocally waives her right to any and all 'sums of money,' from Broadbent and releases and discharges Broadbent from any contracts, agreements, executions and covenants 'from the beginning of the world to the present day.'" See Plaintiff's Memorandum of Law in Reply to Defendant's Opposition to Plaintiff's Motion to Enforce Settlement Agreement (DE# 39 at 2 citing Exhibit A, 10/19/09). The defendant responds that the Settlement Agreement did not extinguish her rights as a beneficiary of the annuity contract. See Defendant's Response to Plaintiff's Motion to Enforce Settlement Agreement (DE# 35, 10/3/09). "The Settlement [A]greement contains reciprocal releases. In it Edynak released any claim she had against her sister, Denley, and her mother, Broadbent. But the dispute here involves a designation of beneficiary under an annuity contract procured by Broadbent, not a claim against either Denley or Broadbent." Id. at 3.

The undersigned finds the case of Cooper v. Muccitelli, 682 So.2d 77, 79 (Fla. 1996) instructive. In Cooper, as here, the parties executed general releases – "the separation agreement mutually released each party from all the claims of the other." Id. at 78. The general release stated, in part:

> 7.      Mutual Release of General Claims. Except as expressly provided in this Agreement, each party hereby waives, releases and discharges all claims, causes of action, rights or demands, known or unknown, past, present or future, which he or she now or hereafter has,

6

might have, or could claim to have against the other by reason of any
matter, thing or cause whatever, prior to the date of this Agreement.

Id.  As in the instant case, the settlement agreement did not address the financial

product at issue, Cooper concerned an insurance policy. Id. The former wife in Cooper

was the primary beneficiary of two insurance policies. Id. The former husband changed

the beneficiary in one of the policies to his stepdaughter but his former wife remained

the beneficiary of the other policy (hereinafter "disputed policy"). Id. Following the

husband's death, the former wife and his stepdaughter both filed for the proceeds of the

disputed policy. The trial court determined that the former wife was entitled to the

proceeds of the disputed policy. The Florida Supreme Court affirmed, reasoning that:

> [t]o the extent that [the former wife] may have claimed a right to remain
> [the] primary beneficiary under the [disputed] policy as a condition of the
> dissolution of marriage, she waived any such claim when she signed the
> [separation] agreement. [The former husband] was free to designate
> whomever he wished as beneficiary . . . . After signing the separation
> agreement, [the former husband] did just what he needed to do to ensure
> that the proceeds would go to [the former wife] -- he did nothing.

Id. at 79. Thus, although the former wife had signed a general release, the former

husband failed to change the beneficiary and, as such, the wife was entitled to the

proceeds of the policy. The same reasoning applies here. The defendant may have

waived certain claims against her mother's estate, however, the Settlement Agreement

does not preclude her from collecting the funds as the beneficiary of the annuity.

Similarly in Smith v. Smith, 919 So. 2d 525 (Fla. 5th DCA 2005), a former

husband and wife entered into a marital settlement agreement in connection with their

dissolution of marriage. Id. at 527. "The agreement contained provisions relating to the

equitable distribution of certain of the assets of the parties, and contained, as well, a

general release of claims." Id.  The former husband passed away approximately one

and a half years after the final judgment of dissolution of marriage. Id. The former wife

was named as the beneficiary on certain policies and plans including a life insurance

policy and an IRA and retirement plans. The former husband:

> never took the steps necessary to accomplish a change of beneficiary on
> the disputed policies and retirement plans in the manner required by any
> of the insurers or plan administrators, even though he was clearly
> authorized to effect a change of beneficiary by the marital settlement
> agreement. He, in fact, even acquired some change of beneficiary forms
> for some of the policies and plans, but never executed or filed them.

Id.  Following the former husband's death, the former wife and his estate made claims

on the disputed funds. Id. The trial court granted summary judgment for the estate

finding that "the marital settlement agreement acted as a waiver of any right [the former

wife] might have to the disputed funds." Id. The former wife appealed. The appellate

court reversed holding that "the marital settlement agreement fails to make specific

reference to the proceeds of the life insurance policy in question, and the decedent, in

the words of the Florida Supreme Court in Cooper[ ], 'did just what he needed to ensure

that the proceeds would go to [the former wife] -- he did nothing.'" Id. at 528 (citing

Cooper v. Muccitelli, 682 So.2d 77, 79 (Fla. 1996)). The appellate court reached the

same conclusion concerning the IRA and retirement plans:

> the marital settlement agreement did not mention a disposition of the
> proceeds of the plans and accounts, and the decedent never changed the
> beneficiary designations. Under these circumstances, courts "need look
> no further than the plain language of the policy" to determine who the
> decedent intended as beneficiary of the proceeds.

Id. (citing In re Estate of Dellinger, 760 So. 2d 1016, 1017 (Fla. 4th DCA 2000)). Thus,

the general release executed by the former wife in Smith was insufficient to waive her

rights to the disputed funds where she was the named beneficiary. Similarly here, the

general release executed by the defendant in the instant case does not specifically

preclude the defendant from recovering the funds in the annuity.  A plain reading of paragraphs 4 and 7 show that the defendant was waiving her right to bring claims against Ms. Broadbent, her attorneys, agents and other representatives, not against third parties such as Transamerica. Any claim that the defendant would bring regarding the annuity would be against Transamerica not Ms. Broadbent's estate. As such, the plaintiff is not entitled to the relief sought.

The plaintiff argues, without citation, that "Ms. Edynak was not, and is not, a party to the Transamerica annuity. Transamerica's contractual obligations are to Ms. Broabent and her legal representatives, not to Ms. Edynak." See Plaintiff's Memorandum of Law in Reply to Defendant's Opposition to Plaintiff's Motion to Enforce Settlement Agreement (DE# 39 at 7, 10/19/09) (footnote omitted). The undersigned disagrees with the plaintiff's analysis. The proceeds of the annuity in the instant case are not part of Ms. Broadbent's estate and any claim the defendant would bring would be against Transamerica. See Luszcz v. Lavoie, 787 So. 2d 245, 248 (Fla. 2d DCA 2001) (en banc).

In Luszcz, the appellate court noted, in the context of an IRA account, that:

An IRA is a contract with an institution that involves a third-party beneficiary designation. The rights of a spouse who has been named a beneficiary of an IRA arise from that contract, not from the marital relationship. Further, a beneficiary's rights to proceeds do not attach until the IRA owner's death. Until then, the beneficiary merely has an expectancy in the IRA because until the owner's death, the owner can do with the IRA as desired, including changing the beneficiary designation or cashing out the account altogether. **Upon the IRA owner's death, however, the beneficiary's expectancy becomes an interest that attaches to the proceeds of the IRA, and those proceeds pass directly to the beneficiary; they do not pass through the estate**.

Luszcz, 787 So. 2d at 248 (emphasis added) (internal citations omitted). The Court in

9

Luszcz "conclude[d] that the beneficiary designation in [the] IRA contract control[ed] over that part of an IRA the owner was awarded in a dissolution of marriage. Because an IRA is a contract with an institution, not with a spouse, this holding applies regardless of whether the parties to the dissolution have executed releases." Id. at 249. An annuity is analogous to an IRA account in that they both provide for the designation of a beneficiary. See In re Estate of McIntosh, 773 A. 2d 649, 652 (N.H. 2001) (observing that "[l]ife insurance, joint bank accounts with right of survivorship, and annuities share many common characteristics with IRA accounts . . . . [F]or each of these, the originator designates a beneficiary who maintains an expectancy during the originator's life and whose rights vest either upon the originator's death. *. . .* Thus, the proceeds of these types of accounts or policies are not a part of an originator's estate, but instead pass automatically at death to the named beneficiary. . . . For each, it is the originator's burden to change the named beneficiary."). The annuity at issue in the instant case is not part of Ms. Broadbent's estate and the defendant is free to bring claims against third parties, including Transamerica.

The plaintiff further argues that the defendant "by seeking to laying claim to the Transamerica Annuity . . . is challenging and attempting to undermine Ms. Broadbent's undisputed testamentary intent (as well as the letter and spirit of the Settlement Agreement)." See Plaintiff's Memorandum of Law in Reply to Defendant's Opposition to Plaintiff's Motion to Enforce Settlement Agreement (DE# 39 at 8, 10/19/09). The plaintiff notes that Ms. Broadbent in her "Last Will and Testament . . . devised  bequeathed 'all the rest, residue and remainder of [her] property, real, personal and mixed, of whatever nature and wherever situated to [Ms. Denley] . . . .'" Id.  As noted above, the annuity is

not part of Ms. Broadbent's estate. <u>See</u>  <u>In re Estate of McIntosh</u>, 773 A. 2d at 652,

<u>supra</u>. Moreover, the Court's jurisdiction is limited to the enforcement of the terms of the

Settlement Agreement. <u>See</u> Order of Dismissal (DE# 32). It is not for this Court to

interpret Ms. Broadbent's Last Will and Testament. Where as here, the Settlement

Agreement makes no specific mention of the annuity,[5]  "the [Court] need look no further

than the plain language of the policy itself." <u>Cooper v. Muccitelli</u>, 682 So.2d 77, 79 (Fla.

1996); <u>Smith v. Smith</u>, 919 So. 2d 525, 528 (Fla. 5th DCA 2005).

### CONCLUSION

The Settlement Agreement does not preclude the defendant from enforcing her

rights against Transamerica as the beneficiary of the annuity. The parties in entering

into the Settlement Agreement negotiated a contract. Whether the plaintiff now feels the

settlement should have also included the annuity, is no grounds to rewrite the terms of

a valid contract. Ms. Broadbent had over ten years[6] to change the beneficiary of the

annuity. Having failed to take the routine steps to change the beneficiary on the annuity

during her lifetime, Ms. Broadbent's estate cannot now petition the Court to do it for her.

---

[5] In <u>Smith</u>, the appellate court noted that "while it may be possible in a marital settlement agreement to waive one's right as a beneficiary of insurance policies, that waiver can only be accomplished if the waiving party specifically gives up his or her rights to the 'proceeds' of these policies." <u>Smith</u>, 919 So. 2d at 528 (footnote omitted) (observing that "language such as 'death benefits' would likely suffice.").

[6] The plaintiff attempts to argue that her mother "then an ailing senior citizen - neglect[ed to] chang[e] the beneficiary designation on an annuity which she was likely unaware of." <u>See</u> Plaintiff's Memorandum of Law in Reply to Defendant's Opposition to Plaintiff's Motion to Enforce Settlement Agreement (DE# 39 at 7, 10/19/09). However, since the annuity policy date of September 11, 1998, Ms. Broadbent had the presence of mind to purchase the subject property in 2002, execute her Last Will and Testament in 2005, transfer her interest in the property to Ms. Denley on July 26, 2006, initiate and prosecute this lawsuit in 2006 and enter into a settlement agreement in January, 2007.

## RECOMMENDATION

For all the foregoing reasons, the undersigned recommends that the Plaintiff's

Motion to Enforce Settlement Agreement and Incorporated Memorandum of Law (DE#

33, 9/24/09) be **DENIED**.

The parties have ten (10) days from the date of receipt of this Report and

Recommendation within which to serve and file written objections, if any, with the

Honorable Paul C. Huck, United States District Court Judge. Failure to file objections

timely shall bar the parties from attacking on appeal the factual findings contained

herein. See LoConte v. Dugger, 847 F. 2d 745 (11th Cir. 1988), cert. denied, 488 U.S.

958, 109 S.Ct. 397 (1988).

RESPECTFULLY SUBMITTED at the United States Courthouse, Miami, Florida

this **26th** day of October, 2009.

JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies to:

United States District Judge Paul C. Huck
All counsel of record